IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LASHELL HALL, o/b/o C.E.M., JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | CIVIL ACTION NO. 2:13cv121-CSC<br>(WO) |

**MEMORANDUM OPINION**

Plaintiff Lashell Hall filed this lawsuit on behalf of her son, C.E.M., Jr.,[1] to review a final judgment by defendant Carolyn W. Colvin, Acting Commissioner of Social Security, in which she determined that C.E.M. is not "disabled" and therefore, not entitled to supplemental security income benefits. Her application was denied at the initial administrative level. The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security (Commissioner).[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The parties

---

[1] Pursuant to the E-Government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court has redacted the plaintiff's minor child's name throughout this opinion and refers to him only by his initials, C.E.M.

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

have consented to the undersigned United States Magistrate Judge rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. The court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the court concludes that the Commissioner's decision denying C.E.M. supplemental security income benefits should be affirmed.

## I. STANDARD OF REVIEW

An individual under 18 is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1999). The sequential analysis for determining whether a child claimant is disabled is as follows:

1. If the claimant is engaged in substantial gainful activity, he is not disabled.
2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.
3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (1997).

The Commissioner's regulations provide that if a child's impairment or impairments

are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2) (1997). In determining whether a child's impairment functionally equals a listed impairment, an ALJ must consider the extent to which the impairment limits the child's ability to function in the following six "domains" of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004); 20 C.F.R. § 416.926a(b)(1). A child's impairment functionally equals a listed impairment, and thus constitutes a disability, if the child's limitations are "marked" in two of the six life domains, or if the child's limitations are "extreme" in one of the six domains. *Shinn*, 391 F.3d at 1279; 20 C.F.R. § 416.926a(d).

In reviewing the Commissioner's decision, the court asks only whether her findings concerning the steps are supported by substantial evidence. *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance; it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). (alteration in original) (quotation marks omitted). The court must, however, conduct an "exacting examination of the

[Commissioner's] conclusions of law." *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).

## II.  ISSUES

As stated by the plaintiff, there are two issues in this case.

1. The Commissioner's decision should be reversed because, the ALJ failed to adequately develop the record when she relied upon the non-examining physician who reviewed the evidence before the medical record was complete.

2. The Commissioner's decision should be reversed because, the ALJ erred by acting as both judge and physician.

(Pl's Br., doc. # 12 at 3).

## III.  DISCUSSION

The plaintiff raises two issues related to this court's ultimate inquiry of whether the Commissioner's disability decision is supported by the proper legal standards and substantial evidence.  *See Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).  However, the court pretermits discussion of the plaintiff's specific arguments because the court concludes the ALJ's determination is supported by substantial evidence.

C.E.M. was born prematurely on April 16, 2010.  (R. 113).  He was three (3) months old on the date the application for benefits was filed.  (*Id*.).  C.E.M.'s disabling condition was low birth weight.  (R. 134).  The ALJ concluded that C.E.M. is not disabled and therefore denied his claim for supplemental security income.  (R. 20).  Under the first step, the ALJ found that C.E.M. is not engaged in substantial gainful activity.  (R. 22).  At the second step,

4

the ALJ found that C.E.M. suffers from severe impairments of "premature birth and status post adenoidectomy."[3] (*Id.*) At step three, the ALJ found that C.E.M. did not have an impairment or combination of impairments that met or medically equaled a Listing in Appendix 1 of 20 C.F.R. Part 404, Subpart P.[4] (R. 22-23). The ALJ then considered whether C.E.M.'s impairments were "functionally equal" a level of severity in a Listing. (R. 23-33).

In order to functionally equal a listing, C.E.M.'s impairments must result in "marked" limitations in two or more of six functional domains or "extreme" limitation in one functional domain. 20 C.F.R. § 416.926a(a). These six functional domains are set forth in the applicable regulations: Acquiring and using information; Attending and completing tasks; Interacting and relating to others; Moving about and manipulating objects; Caring for yourself; and Health and physical well-being. *Id.* at 416.926a(b).

The ALJ concluded that C.E.M. has "no limitation" in the domains of acquiring and using information, attending and completing tasks, interacting and relating to others, moving about and manipulating objects, and caring for himself. (R. 27-32). However, the ALJ concluded that C.E.M. has a "less than marked limitation" in the domain of health and well-being. (R. 32-33). Because the ALJ concluded that C.E.M. does not have marked limitations in two areas of functioning or an extreme limitation in one area of functioning, the ALJ

---

[3] An adenoidectomy is the surgical removal of the adenoids because the adenoids can constrict breathing through the nose.

[4] The ALJ specifically considered whether C.E.M.'s impairments met Listings 100.01, Growth Impairment, 105.01, Digestive System, or 103.01, Chronic Pulmonary Insufficiency. (R. 23).

concluded that C.E.M. was not disabled.  (R. 33).

The crux of this case is the ALJ's reliance on the non-examining physician to determine to the severity of C.E.M.'s functional limitations.  The ALJ gave "significant wight to the opinions of Dr. Heilpern."  (R. 26).   C.E.M. argues that the ALJ failed to properly develop the record because "she relied on the non-examining physician who reviewed the evidence before the medical record was complete."  (Doc. # 12 at 3).  The plaintiff is simply wrong.  While the ALJ gave weight to Dr. Heipern's opinions, she considered detailed C.E.M.'s medical evidence including evidence of treatment after Dr. Heilpern offered his opinions.  (R. 24-25).  In her opinion, the ALJ stated that

> she considered the opinions of Dr. Heilpern.  The findings herein are generally in agreement with those of Dr. Heilpern who also determined that the claimant was not disabled.  Although he did not examine the claimant, he provided specific reasons for his opinions indicating that these opinions were grounded in the evidence of record.  The undersigned finds that the evidence received into the record at the hearing level did not provide any new or material information that would <u>significantly</u> alter findings about the claimant's functional limitations.  Although it is noted that the undersigned found "no" limitation in an area where Dr. Heilpern did not indicate a limitation, this difference is supported by the overall record.  Therefore, the undersigned gives significant weight to the opinions of Dr. Heilpern.

(R. 26) (emphasis in original).

The ALJ specifically stated that she accepted the testimony of Dr. Heilpern, and she rejected the statements of the claimant's mother and aunt regarding the severity of C.E.M.'s limitations.[5]  The opinion of the ALJ shows that she carefully considered the evidence in this

---

[5] The plaintiff does not challenge the ALJ's credibility findings.

6

case and was extremely familiar with it. A remand is not required. In this case, the ALJ concluded that although C.E.M. has deficits in health and physical well being, none of his limitations rise to the level of marked or extreme. Substantial evidence supports the ALJ's determination. Although C.E.M.'s mother asserts that he suffers from developmental delay, the evidence does not support that assertion.

C.E.M. was born on April 16, 2010 and was hospitalized until May 5, 2010. (R. 175-207). When he was discharged, his physical examination was "completely within normal limits, including neurologically normal with no cardiac murmur noted, clear breath sounds and a healing circumcision." (R. 176). Although C.E.M. suffered mild respiratory distress syndrome at birth, (R. 178), when he transitioned to room air, he "had no further respiratory issues." (*Id*.)

C.E.M. was seen by Dr. Holloway at Adolescent and Pediatric Associates on May 25, 2010. (R. 216-17). At that time, C.E.M. was feeding well and it was reported that he "never spits up." (R. 217). He was on no medications, and he appeared well developed and well nourished. (R. 217). On July 6, 2010, C.E.M. was seen for a Medicaid screen.[6] (R. 217-18). At that time, C.E.M. was feeding well, and only spitting up occasionally. (R. 218). It was

---

[6] Relying on a single printout from Baptist Hospital, (R. 214), the plaintiff asserts that C.E.M. was hospitalized from June 11, 2010 until June 23, 2010 and complains that the ALJ and Dr. Heilpern did not consider this hospitalization. There are no medical records demonstrating that C.E.M. was hospitalized during that time, and none of the doctor's notes reflect that he was hospitalized at that time. It is the plaintiff who bears the burden of establishing through evidence that his impairments result in functional limitations and that he is "disabled" under the Social Security Act. *See* 20 C.F.R. § 404.1512 (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled").

noted that C.E.M. "has difficulty breathing through both nares." (*Id*.) However, it was also noted that he was well developed and well nourished. (*Id*.)

On September 8, 2010, C.E.M. was seen at Children's Health Services for prolonged nasal congestion and noisy breathing. (R. 245). He was diagnosed with reflux (GERD) and stridor.[7] (R. 251). On December 16, 2010, C.E.M. was seen for "moderate rhinorrhea" and a mild cough. (R. 230). He was not on any medications, and he was "well appearing, well developed and active." (*Id*.) On February 10, 2011, C.E.M. was eating well. He had moderate wheezing so he was treated with Xopenex. (R. 27, 231). After the treatment, he was no longer wheezing. He was diagnosed with acute bronchiolitis. (R. 228, 232).

On March 23, 2011, C.E.M. was seen at Children's Hospital in Birmingham, Alabama. (R. 234). Although he had previously been given Zantac for the GERD, his breathing remained noisy. (*Id*.) On June 1, 2011, C.E.M. underwent a larynogoscopy and a bronchoscopy. The larynogoscopy revealed a normal larynx and the bronchoscopy demonstrated a normal tracheabronchial tree. (R. 255-270, 272-299). An adenoidectomy was also successfully performed.[8] (*Id*.)

Dr. Holloway next saw C.E.M. on November 3, 2011, when C.E.M. was 18 months, 18 days old. At that time, Dr. Holloway's treatment notes include the following narrative.

> He is drinking whole milk. He is eating table food. He never spits up. He is

---

[7] Stridor is noisy breathing that occurs due to obstructed air flow through a narrowed airway. Stridor is not in and of itself a diagnosis but is a symptom or sign that points to a specific airway disorder.

[8] *See* Fn. 3, *supra*.

off the bottle. He is no longer using a pacifier. His stools are normal. He rides restrained in car seat facing rearward in the back seat. walks well He has not started toilet training for urine. He has not started toilet training for stool. He does not attend day care. Denver Development Screen reviewed.[9] There are no other concerns. Discussed Well Child Care. Discussed preterm 32wks 3lbs 3oz. Discussed Hernia - Umbilical. Discussed prolonged nasal congestion and stuffiness. Discussed uri. Discussed Anemia nos. Discussed Anemia nos, which has resolved. Current medications: budesonide 0.25 mg/2 mL Neb. Suspension, albuterol sulfate 2.5 mg/3 mL (0.083%) Neb Solution. **His Development is within normal limits: He says 4-10 words; He follows simple commands; he walks fast, walks backward; He walks up stairs without help; He stacks 3-4 blocks; He turns pages in a book; He feeds self, using a cup and spoon; He looks at a book and names pictures; He gives hugs and kisses; He imitates household chores; He identifies body and names pictures; He gives hugs and kisses; He imitates household chores; He identifies body parts; He throws a ball**.

(R. 228) (emphasis added)

Despite the narrative report, Dr. Holloway diagnosed C.E.M. with Developmental Delay. (R. 229). Although C.E.M.'s mother testified at the administrative hearing that C.E.M. was scheduled for therapy for his developmental delay, there are no medical evidence supporting this assertion.[10]

---

[9] At the administrative hearing, the ALJ specifically requested the results of the Denver Development Screen. (R. 46-47). On February 15, 2012, plaintiff's counsel informed the ALJ that Dr. Holloway did not perform the Denver Developmental Screen. (R. 112). His nurse "expressed that Dr. Holloway made the diagnosis of **developmental delay** based on his clinical examination findings." (*Id*.)

To the extent that C.E.M. complains that the ALJ substituted her judgment for the physician's because no Denver Development Screen was performed, he is entitled to no relief on this basis. The ALJ considered the lack of the Denver Development Screen *in conjunction with* other evidence including "no follow-up treatment records, no therapy records, and nothing to flesh out this possible diagnosis and contradict a record that shows the child is within normal limits otherwise." (R. 28).

[10] At the administrative hearing on January 6, 2012, C.E.M.'s mother testified as follows:

Q: Now, Ms. Hall, I know your son is only one years [sic] old and he's kind of a little guy, but he's already been diagnosed with developmental delay?
A: Yes, sir.

9

It is clear from a review of the record that the ALJ considered C.E.M.'s functional limitations and concluded that any limitations were less than marked.  Furthermore, the ALJ properly considered all of C.E.M.'s impairments and concluded that C.E.M. "does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or "extreme" limitation in one domain of functioning." (R. 33). C.E.M.'s treating physician consistently notes he is well developed despite his premature birth. (R. 217, 218, 230, 228).  There is no evidence, except Dr. Holloway's unexplained diagnosis, of developmental delay, and Dr. Holloway's own treatment notes do not support his diagnosis.

Pursuant to the substantial evidence standard, this court's review is a limited one; the entire record must be scrutinized to determine the reasonableness of the ALJ's factual

---

Q:  And are you going to have to seek therapy for that?
A:  Yes, sir.  His doctor – he's the one request (sic) it, and he said he's going – he caused to want a CCAD on Carmichael Road, the adolescent for development delay and they told me to bring him in February 24.
Q:  And you are going to start therapy then?
A:  Yes, sir.
        *        *        *
Q:  Ms. Hall, what was the developmental delay?  Did they tell you in what area he was having problems?
A:  His doctor – well, his doctor he request, and told me to take him over there, said he was going in the fall said that he had the development delay and said that he seemed that he was very behind.
Q:  Did he tell you what areas he was behind in or did he not tell you?
A:  No, he didn't tell me all the areas.  He just said that he see that he behind and say he supposed to be doing more than what he doing for his age.

(R. 43-46).

Although plaintiff's counsel requested an additional thirty days to secure additional medical records, no records were submitted.  In addition, the ALJ specifically instructed counsel to request additional time if necessary. (R. 47).

findings.  *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992).  Given this standard of review, the court finds that the ALJ's detailed explanation of C.E.M.'s limitations, coupled with her analysis of C.E.M.'s complete medical history, was reasonable and consequently, is supported by substantial evidence.

## IV.  CONCLUSION

In short, the court has carefully and independently reviewed the record, and concludes that the ALJ's conclusion that C.E.M. is not disabled is supported by substantial evidence. Thus, the decision of the Commissioner should be affirmed.

A separate order will issue.

Done this 29th day of October, 2013.

        /s/Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE